# COUNTY COURT—NASSAU COUNTY,
## April, 1916.

### THE PEOPLE v. JOHN OSTROSKY.

(95 Misc. 104.)

ARREST BY PRIVATE PERSON, WITHOUT A WARRANT—DELIVERY TO PEACE
OFFICER—INFORMATION LAID AFTER ARREST CHARGING PETIT LARCENY—
PENAL LAW, §§ 1290, 1298.

A private person who without a warrant has arrested another for
a crime committed in his presence may deliver him to a peace officer
whose right to take the offender into custody without a warrant is a
continuation and part of the original right to make the arrest without
a warrant.

Where in such case the offender was brought before a magistrate it
is unnecessary for him to make out or issue a formal warrant, the only
office of which is to authorize and direct the arrest of one charged with
having committed a crime.

Where one arrested without a warrant is taken before a magistrate
who prepares an information upon which the defendant is arraigned
and upon a plea of not guilty goes to trial and the evidence is suffi-
cient to establish his guilt the judgment of conviction will be affirmed
as against the contention that the magistrate acquired no jurisdiction
because at the time defendant was taken before the magistrate no
information had been made or filed; even if defendant's arrest had
been illegal the magistrate acquired jurisdiction when the information
was taken and defendant was arraigned to answer the charge contained
therein.

An information accusing defendant of having " unlawfully, will-
fully and feloniously taken, stolen and carried away " a certain num-
ber of chickens in violation of sections 1290 and 1298 of the Penal
Law held to have the same effect as if said sections had been fully
incorporated in the information.

APPEAL from a judgment of Walter R. Jones, a justice of
the peace, sitting as a Court of Special Sessions, town of

Hempstead, Nassau county, N. Y., convicting the defendant of petit larceny and sentencing him to six months' imprisonment in the New York County Penitentiary.

*Clock* and *Seaman* (*Harry G. Clock*, of counsel), for appellant.

*Lewis J. Smith, District Attorney* of Nassau county (*Charles J. Wood, Assistant District Attorney*), for respondent.

·NIEMANN, J.:

On January 5, 1916, about five o-clock P. M., William R. Meyer, the complaining witness, locked up his chickens in the coop, and closed and locked the door of the chicken yard. About nine o'clock that evening a noise was heard coming from the chicken yard. Two young ladies who were in the house opened a window and looked down in the chicken yard and saw a man going out of the chicken yard, over the fence. A man named Seel also looked out of the window and these persons saw the man and identified him as the defendant. The complainant ran out of the house into the chicken yard and saw several of his chickens in the yard dead, or dying, with their necks wrung. The doors of the chicken yard and coop were open. He saw a man in the chicken yard and this man ran toward the back fence of the yard. Meyer ran out of the yard into the street and was joined by Seel and they both ran after the man, who was the defendant. Two other persons came up the street and saw the defendant. One of them saw him as he was jumping the fence and the other saw him just after he had jumped over the fence and was starting to run from the other side. They all gave chase—others joining in the pursuit. The defendant was seen to stop and wash his hands at a little brook back of the fence. He was finally caught and held by the witness Seel and others until an officer came. He was taken

back to Meyer's yard, and from there to the lockup and kept there over night. The following morning he was taken before Justice Jones who took the information and deposition of the complaining witness Meyer, and the deposition of the witness Seel, under oath. The justice read the information and depositions to the defendant, arraigned him, and informed him of his rights as required by the statute. The defendant plead not guilty and was remanded for trial. His trial and conviction followed.

A reading of the record satisfies me that the evidence was sufficient to establish the commission of the offense by the defendant, but the defendant attacks the validity of the judgment upon several grounds which I will consider in the order in which they are stated.

*First*, the defendant claims that his arrest was illegal because he was arrested by an officer without a warrant for a misdemeanor not committed in his presence; *second*, that it was illegal, also, because no warrant for his arrest was issued; *third*, that the justice acquired no jurisdiction, because at the time the defendant was taken before the justice no information had been made or filed; *fourth*, that the information which was taken by the justice when the defendant was arraigned before him is fatally defective because it fails to charge that the taking was " with the intent to deprive or defraud the true owner of his property; " and *fifth*, that the information does not charge, and the evidence does not establish, the commission of the crime of larceny.

(1) There is no right to arrest without a warrant for a past misdemeanor. People v. Adler, 3 Park, 249; People ex rel. Kingsley v. Pratt, 22 Hun, 300. But the complainant Meyer and the witness Seel had a lawful right to arrest the defendant under the circumstances shown by the evidence. Section 183 of the Code of Criminal Procedure provides that " A private person may arrest another: For a crime committed or

attempted in his presence." The police officer had the right to receive the defendant from the hands of said persons who had arrested him.

Section 185 of the said Code provides that " A private person, who has arrested another for the commission of a crime, must, without unnecessary delay, take him before a magistrate, or deliver him to a peace officer."

The latter part of said section was complied with by the delivery of the person of the defendant to the peace officer. The officer had a right to take the defendant into his custody then and there without a warrant. In fact, it was the duty of said officer to take the defendant into his custody in order to prevent his escape. The defendant was caught as he was attempting to escape and the private persons who had arrested him had a right to relieve themselves of the further custody of the prisoner either by taking him before a magistrate or by delivering him to a peace officer. It was the duty of the peace officer to take him out of their custody into his custody. If he had refused to do so the defendant could have carried out his attempt to escape and public justice might have been frustrated. The officer would have been derelict in his duty if under the circumstances he had refused to take the defendant into his custody. He did not require the authority of a warrant, because the statute above quoted expressly provides for the transfer of a person who has been arrested without a warrant by a private person to a peace officer. The right of the officer to receive and take the prisoner without a warrant was a continuation and part of the original right to arrest him without a warrant.

(2) As the defendant was brought before the magistrate upon an arrest the circumstances of which made a warrant unnecessary and took the place of a warrant, it was unnecessary that the justice make out or issue a formal warrant against the defendant. The office of a warrant is to authorize and direct

the arrest of a person who has committed a crime. But the requirement of a warrant falls away entirely when the crime is committed in the presence of a person who makes the arrest; so also when the person arrested is received by a peace officer from the person who made such arrest. People ex rel. Gunn v. Webster, 75 Hun, 278; People v. Mulkins, 25 Misc. Rep. 599; People v. Burns, 19 id. 681.

(3) The existence of an information at the time the defendant was brought before the justice was not necessary to give the justice jurisdiction of the defendant. From the very nature of the matter, no preliminary information can be in existence in a case where a man is arrested in the act of committing a crime and is then brought before a magistrate. To require an information under such circumstances would be to nullify the statutory power to arrest criminals when caught in the act, because the absence of an information would prevent the justice from taking any cognizance of the matter, and the defendant would have to be allowed to go free. There is no more reason for requiring in advance an information in order to give the justice jurisdiction in such a case than the preliminary issuance of a warrant. People ex rel. Gunn v. Webster, *supra.* The object of an information is to inform the defendant of the specific charge against him. That was done in this case. An information was duly prepared by the justice and the defendant was thereupon arraigned and interposed a plea of not guilty. That is, the defendant was legally charged with the commission of a crime, which he put in issue by his plea of not guilty. Thereupon he had a trial.

The office of an information, *i. e.,* to inform him of the specific charge against him, was fully performed. The information was necessary to support the charge upon which he was tried, but it was not necessary to support or warrant his arrest. He was as fully protected in his rights, so far as the trial of the issue as to his guilt or innocence was concerned, by the filing of

the information at the time he was first brought before the justice as if the information had been in existence before his arrest. People v. Angie, 74 App. Div. 539; People ex rel. Farley v. Crane, 94 id. 397.

Furthermore, even if the defendant's arrest had been illegal, the justice acquired jurisdiction of the defendant when the information was taken and filed and he was arraigned before him to answer the charge contained in said information. People v. Iverson, 46 App. Div. 301; People v. Jeratino, 62 Misc. Rep. 587; People v. Eberspacher, 79 Hun, 410; People ex rel. Edwards v. Warden, 37 Misc. Rep. 635; People v. Cuatt, 70 id. 453; People v. Harmer, 75 id. 309, 400. The sole question is whether the court had jurisdiction of the offense charge. If that is shown the fact that the defendant was brought before the court upon an illegal arrest would not affect the validity of his trial and conviction.

The case of People ex rel. Lawton v. Snell, 168 App. Div. 410; revd., 216 N. Y. 527, is not an authority against the rule repeatedly laid down that irregularity or illegality in the bringing of a defendant before a magistrate does not affect the magistrate's authority to entertain the case. The relator was arrested in Schoharie county under a warrant issued in Rensselaer county in bastardy proceedings. The reversal in the Court of Appeals was based upon the ground that the relator had a right to be taken before a magistrate in Schoharie county to give him an opportunity to give a bond before being taken before the Rensselaer county magistrate for trial, and that the taking of the relator before the Schoharie county magistrate was a condition precedent by virtue of the statutory requirements in that particular kind of proceeding.

But the doctrine laid down in the case of People v. Eberspacher, *supra*, was fully upheld by all the judges writing, and Judge Collin who wrote the majority opinion for reversal was particular to say (p. 535): " The reasons for reversal are not

opposed, at any point, to those for the decision in People v. Eberspacher, 79 Hun, 410. The mere illegality of the act of the officer in refusing to take the relator before the magistrate of Schoharie county, or in taking him directly before the police justice is not the basis for our conclusion. The basis for it is that the taking of the relator before the Schoharie county magistrate was a condition precedent, by virtue of the statutory requirements, to the making of the inquiry and the order of filiation, and was not fulfilled. This feature was lacking in the Eberspacher case."

This case settles more fully and completely than ever the rule that the court has jurisdiction to proceed against a defendant upon information made and filed, although he was illegally brought before the court.

(4) The claim of the learned counsel for the defendant that the information is fatally defective, is, in my opinion, untenable. An information, though inartificially drawn, is legally sufficient if it contains a substantial statement showing the commission of the particular offense charged. People v. James, 11 App. Div. 607; People v. Pillion, 78 Hun, 74; People v. Payne, 71 Misc. Rep. 72. The information in the case at bar meets this requirement. It alleges: " That on January 5, 1916, at the said village and town of Hempstead, Nassau county, New York, divers goods, chattels and property of deponent of the value of less than $50, to wit: of the value of $10, of the kind, description and value as follows, to wit: 10 chickens, 2 roosters and 8 hens were unlawfully, wilfully and feloniously taken, stolen and carried away from the possession of the deponent by one John Ostrosky entering the premises occupied by deponent in the said village and town of Hempstead, Nassau county, New York, and going into the chicken yard through a gate and taking from the chicken house in said yard the said 10 chickens and pulling the head off of one of said chickens and twisting and wringing the necks of the others causing them to die, and at-

tempting to take said chickens from said premises, but was prevented by being discovered in the act, all of which was wilful, unlawful and in violation of sections 1290 and 1298 of the Penal Law of the state of New York."

I am of the opinion that the statement in the information that the acts charged were in violation of sections 1290 and 1298 had the same effect as if the said sections had been fully incorporated in the information.

The information itself accuses him of having " unlawfully, wilfully and feloniously taken, stolen and carried away " the property, and the further statement in said information that he did this in violation of said sections was tantamount to saying that he did so with the intent to deprive and defraud the true owner of his property.

The statement in the information that the defendant feloniously took, stole and carried away the property in question, was in itself sufficient without incorporating in the information a reference to the said sections. The use of the word " feloniously " was a sufficient allegation of the intent necessary to constitute the crime. Phelps v. People, 72 N. Y. 335, 337, 350; People v. Conroy, 97 id. 68; People v. Willett, 102 id. 251, 253, 254; People v. Moore, 37 Hun, 84, 93; People v. Mosier, 73 App. Div. 5.

(5) The fact that the chickens were not taken away from the premises by the defendant is not a defense to the charge of larceny. There was a sufficient asportation when the chickens were taken out of the coop. The slightest removal of the property from the place where it was before, with an intent to steal it, is a sufficient asportation. Harrison v. People, 50 N. Y. 518; People v. Mills, 178 id. 274, 286.

Possession by the thief, no matter how brief in point of time, completes the crime of larceny.

The learned counsel for the defendant says that the informa-

tion at most charges an attempt to commit the crime of larceny, because it reads in part as follows: " And attempting to take said chickens from said premises but was prevented by being discovered in the act; " that is, the chickens were not carried away.

In the case of Harrison v. People, *supra*, the defendant was tried for larceny. The evidence showed that he " put his hand into the coat pocket of complainant, seized the pocketbook of the latter, containing money and securities, and lifted it about three inches from the bottom of the pocket. Held, a sufficient carrying away to constitute larceny.

There are many cases in the books, where the least removing of the property and the most temporary possession thereof was held to amount to asportation. A number of such instances are given in the case of Harrison v. People, *supra*, viz.: Snatching a diamond earring from a lady's ear, but dropping it and leaving it in her hair. Lapier's Case, 1 Leach, 320. Lifting a pocketbook from out the pocket but dropping it back again. Rex v. Thompson, 1 Moody Cr. Cas. 78. Larceny of a watch: Defendant took a watch out of owner's pocket and forcibly drew chain through buttonhole of waistcoat. Point of key was caught on button of another hole and was thereby suspended. Defendant's hand was seized by owner's wife. It was argued that this was an attempt only. The court held that as the chain had been removed from the buttonhole, the felony was complete. " The watch was temporarily, though for a moment, in his possession, it was said." Regina v. Simpson, Dearsly Cr. Cas. 421. Also the following cases may be cited: Removing a parcel from one end of a wagon to another. Coslet's Case, 1 Leach, 236. Lifting a sword partly out of the scabbard. Rex v. Walsh, 2 Russ. Cr. 153. Causing a horse to be led out of a stable to mount. Rex v. Pitman, 2 C. & P. 423. A postman's putting a letter in his pocket instead of delivering or re-

turning it. R. v. Poynton, L. & C. 247. Removing a drawer of money from a safe and leaving it outside. State v. Green, 81 N. C. 560. Removing wheat from owner's garner, in a mill, into defendant's adjoining garner. State v. Craige, 89 N. C. 475; 45 Am. Rep. 298.

It follows that the judgment of conviction must be affirmed.

Judgment affirmed.