EDMUND B. BELLINGER, JR., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32041.)

Court of Claims, August 13, 1954.

*Edmund B. Bellinger* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Quentin E. Grant* and *Harold S. Coyne* of counsel), for defendant.

LAMBIASE, J.   Claimant has filed this claim to recover damages for false imprisonment, assault and malicious prosecution.   It was duly filed.

Claimant and his companion, one Treadwell, were, on August 18 and 19, 1951, members of the New York State National Guard and were on duty with the National Guard, being in charge of a truck and a trailer carrying government property.   They had driven said vehicles from Pine Camp through the town of Columbia, Herkimer County, New York, at which latter place they stopped and entered the South Columbia hotel.   It was their intention to sleep in the truck that night, either in the hotel parking lot or at some other place.   They arrived at the hotel at about 10:00 P.M. on August 18, 1951.   When they entered the building, they were wearing their uniforms and they were armed — claimant with a carbine and Treadwell with a forty-five caliber automatic pistol.   The hotel proprietor, one Elial Weir, offered to hold or check their weapons for them while they were in the hotel, but claimant and his companion, Treadwell, refused the offer and kept their weapons.   During the course of the evening, claimant and his companion, together, drank at least fifteen bottles of beer, and, several times during the evening, sometimes together, sometimes singly, they left the hotel to check the truck and equipment.

At about 1:00 A.M. of August 19, 1951, one Carl Pfeiffer arrived at the hotel by automobile and as he approached it, he observed Treadwell standing on the edge of the highway waving a forty-five caliber pistol.   He drove his automobile into the hotel parking lot and parked beyond the National Guard truck, and at that time, he saw claimant standing with his carbine in his hands, between his automobile which he had just parked and the truck.   While claimant thus stood there, Treadwell stuck his pistol through the window of Pfeiffer's car and ordered the occupants thereof to get out, saying, in substance, that it was a government inspection.   Claimant at that time was about ten feet away from Pfeiffer's car.   In compliance with Treadwell's order, Pfeiffer and his passenger, one Jean Moreau, got out of the automobile and Treadwell then ordered them to put up their hands and asked them for their identification.   Pfeiffer

and Moreau put up their hands. Pfeiffer then tried to go into the hotel, at which time claimant pulled up his carbine, pointed it at Pfeiffer and told him to stay where he was or he would shoot. At this point another automobile drove into the parking lot and claimant went over to that automobile, pointed his carbine at the occupants thereof, and told them that it was a government inspection and that they must get out of the automobile. At that juncture, Treadwell went over to join claimant at the other automobile and Pfeiffer and Moreau then went into the hotel and informed the proprietor, Weir, of what had happened outside. Thereupon, Pfeiffer, Moreau, Weir, and one or two other persons in the hotel, went out to the parking lot. As they came out of the hotel and went to the parking lot, claimant was standing in front of the National Guard truck guiding its operator — a civilian whom they had procured to drive the same and to get the truck out of the parking lot — out toward the road. While the truck was being thus moved, Weir talked with Treadwell who was standing on the bumper of an automobile in the parking lot. Treadwell, at this time, had his forty-five caliber pistol in his hand and was pointing it in the direction of Weir and three or four other persons who were with Weir, and Treadwell ordered the group not to come any closer. Weir talked with Treadwell in an effort to get him to put down the pistol, and as he did so, he stepped closer to him, whereupon Treadwell hit him on the head with the pistol. Weir then went into the hotel and telephoned for the State troopers. It was then about two o'clock in the morning. Treadwell was disarmed by others and his pistol was taken into the hotel. Having called the State troopers, Weir again went out to the parking lot to prevent claimant and Treadwell from leaving. At this time, claimant, with his carbine slung over his shoulder, was still standing in the glare of the headlights of the National Guard truck, guiding the vehicle, as aforesaid, out toward the highway. Weir went to the truck, reached in and turned off the ignition and took the ignition key. Treadwell was seized and held by a group of persons who had gathered in the parking lot. Weir and others then approached claimant, who, by this time, had his carbine unslung. As they approached claimant, he threatened to shoot them if they did not stay back, saying, in substance, that nobody was going to stop him from taking out the truck and leaving. Claimant, too, was disarmed by the group and was placed beside Treadwell. Both men were held and were not permitted to leave by Weir and others, pending the arrival of the State police.

New York State troopers Bruni and Petacchi arrived at the hotel at about 2:35 A.M. of August 19, 1951, and found claimant and Treadwell surrounded and being detained by a group of persons, among which were Weir, Pfeiffer, Moreau and one Streeter, all of which named persons told the troopers, in substance, what we have hereinbefore set forth as to the happenings of the evening involving claimant and Treadwell. Claimant admitted to trooper Bruni that he and his companion, Treadwell, had been stopping cars and that they had been making a "Federal inspection" and had been searching the vehicles. Trooper Bruni then asked Weir whether he wanted to take action against claimant and his companion, and Weir answered that he did. Bruni then told Weir to come along up to the home of Justice of the Peace Brown; and he thereupon took over custody of claimant and of his companion, Treadwell. It is undisputed that claimant unwillingly entered the troopers' car; and both he and his companion were taken to the home of the Justice. Weir did come to the home of the Justice, as did Moreau and Pfeiffer. Upon arriving at the home of the Justice, Weir was bleeding quite badly from the head injury inflicted by Treadwell. He appeared pale and to be going into a state of shock. He was immediately rushed to a doctor. It appears that Weir did not return to the home of the Justice within a reasonable length of time to sign an information against claimant, although he had not refused to do so before he left. He did testify, however, when claimant was brought to trial upon the charge hereinafter set forth. Weir not having returned within a reasonable period of time, trooper Bruni, himself, filed an information, upon which information together with the supporting affidavits taken by the Justice which were attached thereto, the Justice issued a warrant for claimant's arrest and indorsed it for execution on Sunday and at night. Trooper Bruni then arrested claimant by virtue of the warrant, and claimant was then and there arraigned before the Justice of the Peace. Claimant was charged with violation of subdivisions 2 and 4 of section 722 of the Penal Law of the State of New York. The Justice then adjourned the matter to September 5, 1951, for trial, fixed bail at $250, and committed claimant to the Herkimer County jail to which he was delivered by the troopers at about 4:00 A.M. He was released on bail at about 4:00 or 4:30 the same day.

The trial of claimant before the Justice of the Peace was had on September 6, 1951, and resulted in a conviction of claimant as charged. The conviction was subsequently reversed and the

information dismissed on appeal to the County Court of Herkimer County, New York.

Claimant contends that trooper Bruni arrested him at the South Columbia hotel parking lot; that it was not a turnover arrest; and that the arrest, in fact, was unlawful. The State, on the other hand, contends that the original arrest of claimant was made by a private person — to wit, Weir — who had witnessed the unlawful acts of claimant and of his companion, Treadwell; and that the troopers merely took custody of claimant after he had thus been arrested — that the arrest, in effect, was a turnover arrest; that such arrest by said private person was lawful, and that claimant's detention by trooper Bruni, and through him, by the State of New York, was lawful; that the later arrest of claimant on the charge on which he was tried was lawful, having been made pursuant to a warrant of arrest duly issued by the Justice of the Peace. That claimant's detention and all further proceedings had following the arrest under the warrant were not the responsibility of trooper Bruni or of the State of New York; that the search of claimant's person made following the turnover arrest was lawful and that the trooper had the right to search claimant since the arrest had already been effected by Weir when the search was made; and that the prosecution of claimant by the State troopers was without malice and with probable cause.

We are of the opinion that claimant was arrested by Weir at the parking lot and was detained and held by the latter until the troopers arrived, at which time Weir turned over the claimant to the custody of the troopers. The physical restraint actually employed by Weir was all that was required to effect and, in fact, did effect the arrest of claimant, and no particular formality to effect same was necessary. The arrest having been made by Weir when claimant was in the actual commission of a crime or on pursuit immediately after its commission, was lawful, although made on Sunday and at night.

The troopers had a right to take claimant into custody then and there without a warrant after his arrest by Weir. In fact, it was their duty to take claimant into custody in order to prevent his escape and to comply with Weir's request. (*People v. Ostrosky*, 95 Misc. 104.) " A private person, who has arrested another for the commission of a crime, must, without unnecessary delay, take him before a magistrate, or deliver him to a peace officer." (Code Crim. Pro., § 185.) Weir, having arrested claimant, elected to turn him over to a peace officer (the State troopers), thereby complying with the latter part of the quoted

section. And the troopers, " without unnecessary delay " took claimant before a magistrate.

It may be said that Weir, not having been available to file an information on his arrest of the claimant, the latter would have had to have been released from custody but for the second arrest made as hereinbefore set forth. That second arrest upon the warrant issued by the Justice of the Peace was legal. The Justice of the Peace acquired jurisdiction under the warrant which had been legally issued by him, a judicial officer, after he had decided that the verified papers before him sufficiently charged claimant. It was not, it seems to us, a continuation of the original arrest made by Weir but was a separate and distinct arrest upon a charge of which the court acquired and had jurisdiction to hear and to determine. Claimant's detention thereunder was by due process of law, and for it, neither trooper Bruni nor the State of New York may be cast in damages.

We agree with the State's position that the troopers had a right to search claimant's person under the circumstances herein, since at the time of the search claimant had already been arrested by Weir and had been turned over to the custody of the troopers. We conclude, therefore, that claimant has not made out a cause of action for assault either against the troopers or against the State of New York.

In the view which we have taken, it necessarily follows, and we have concluded, that claimant has failed to establish any of the causes of action alleged in his claim, or any other cause of action against the State of New York, its officers and employees.

The claim of the claimant herein must be and hereby is dismissed upon the merits.

The foregoing constitutes the written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.