Chief Judge Desmond.
Defendant was convicted of third degree assault committed on the person of a New York City-police officer while he was taking defendant into custody on a charge of disorderly conduct as a misdemeanor. Defendant argues that the arrest was illegal because made without a warrant (see Code Grim. Pro., § 177) and that she was thus within her rights and not guilty of criminal assault in using reasonable force to resist the officer’s efforts to detain her (see People v. Cherry, 307 N. Y. 308). It appears to us, however, that according to old and settled rules the police officer acted within his powers under the circumstances and that defendant on the found facts was guilty.
As defendant and two girl companions walked past a Brooklyn shop conducted by a Mrs. Salzberg, one of the three struck Mrs. Salzberg’s daughter. Then defendant ran into the store and assaulted Mrs. Salzberg. A large crowd began to collect on the sidewalk. Mrs. Salzberg locked the door and called the police. Within a few minutes some 60 policemen arrived and found a mob milling about at the scene. Two of the officers testified that when they got to the place defendant was kicking at the shop door and screaming imprecations at those inside. Mrs. Salzberg, bleeding copiously, told the officers that the yelling, kicking girl (defendant) at the door had attacked and injured her and that she (Mrs. Salzberg) wanted defendant arrested. Sergeant Miller, the superior officer, directed his subordinate officer Landau to arrest defendant on Mrs. Salzberg’s complaint. Landau complied by telling defendant that he was taking her into custody for assault at the request of Mrs. Salzberg. Defendant shouted insults at Landau. The crowd of onlookers urged him to let the girl alone. Defendant continued her verbal abuse. Landau told her she would be *102 arrested for disorderly conduct also. When he tried to take hold of her she bit, kicked and scratched him until she was subdued by five policemen.
It would be strange law that would hold such an arrest illegal on the ground that the underlying assault had not been perpetrated in the officer’s presence. A more reasonable view is that the affray was still in progress when the police came. Blood was flowing, a mob had gathered, the accused was kicking at the door to get another crack at her victim. What has the statutory requirement of sworn information and warrant to do with all this ? To prevent irresponsible arrests of presumably innocent citizens, the statute demands that the officer, unless the misdemeanor be committed in his presence, have assurance in the form of a sworn complaint. None of us would strike from the law that reasonable requirement. But the requirement and its purpose are satisfied when as here the visible signs of a continuing assault are right in front of the policeman’s eyes. Here there was presented to his consciousness adequate information that what he saw was the last phase of an assault.
Further support for the legality of this arrest could if needed be found in the common-law and statutory (Code Grim. Pro., § 183) doctrine of “ citizen arrest” or “Arrest by a private person ”. A private person like a police officer can arrest another 11 For a crime committed or attempted in his presence ’ ’. The jurisdiction of a policeman and of a private person is in tin is instance the same. A convincing opinion (People ex rel. Gunn v. Webster, 75 Hun 278) by Judge Haight, later of this court, concluded reasonably that this requirement was satisfied when one officer saw the crime committed but, under that officer’s instructions, the actual taking into custody was by another officer who had not seen the crime. Another logical application of the doctrine was made in People v. Ostrosky (95 Misc. 104, 108) where a citizen who witnessed the criminal act delivered the culprit to a police officer who then lawfully took the offender into custody without having seen the act. The court said, citing People ex rel. Gunn v. Webster (supra), that “ the requirement of a warrant falls away entirely when the crime is committed in the presence of a person who makes the arrest; so also when the person arrested is received by a peace officer from the person who made such arrest ” (p. 108). The only conceivable *103 difference between Gunn and Ostrosky and the present case is that in the former there were physical captures and holdings of the wrongdoers by the persons who later turned them over to the officers who removed them to places of confinement. But the physical laying on of hands by the one who saw was a circumstance, not a requisite. A citizen’s right to arrest his assailant will be a burden, not a benefit, if the citizen had to chance further injury by physically holding onto his attacker till the nearby policeman can run to the citizen’s aid. The rights, securities and protections, public and private, set up by the Code of Criminal Procedure do not depend for applicability on such useless and meaningless conditions.
The judgment should be affirmed.