John A. Anderson.
The defendants herein were originally charged with a violation of Ordinance 1.3, subdivisions (b), (c) and (j), of the Incorporated Village of Rockville Centre.
At the conclusion of the People’s case a motion was made by counsel for the defendants to dismiss all three charges. The motion was granted as to subdivisions (c) and (j) and denied as to subdivision (b).
Defendants thereupon rested and renewed their motions to dismiss.
The relevant portion of the ordinance in question reads as follows:
“ No person shall indulge in disorderly, or noisy or disturbing conduct within the Village. Any person who commits any of the following acts will be considered in violation of this provision: * *
*210 (b) acts in such manner as to annoy, disturb, interfere with, obstruct or be offensive to others ’
The People called as witnesses three employees of the Urban Renewal Department of the Village of Rockville Centre, a sergeant and a patrolman employed by the Village Police Department, and Louis J. Klaess, the complainant and the Acting Director of the Rockville Centre Urban Renewal Department on the date that the offenses were allegedly committed. As indicated above no witnesses were called on behalf of the defendants or either of them.
From the testimony adduced it appears that a group of about 20 persons entered the office of the Village Urban Renewal Department, at or about 4:20 p.m. on Friday, September 24, 1965. Included in this group were the defendants whose identity was conceded. The defendant Miller inquired of one of the employees of the department if Mr. Klaess was in and upon being informed that he was not, asked if they .(the group) could wait. She was informed that they could. At that time defendant Miller handed some papers consisting of 20 to 25 pages to one of the employees of the Urban Renewal Department and said they were complaints that they wanted answered.
Mr. Klaess arrived about 4:30 p.m. and inquired as to why the group was present in the office. He was handed the sheaf of papers and after scanning them he told the group that it was after closing time and that he would study the complaints and answer them on Monday. He stated that it was impossible for him to analyze all of the 21 complaints set forth in the papers and answer them immediately. The defendant Miller, stated they would not leave the premises until the complaints were answered.
Sergeant Healy testified that he arrived at the Urban Renewal office at 4:43 p.m. on September 24, 1965 and that he saw the defendants there at that time. He asked the defendant Miller what she wanted and she told him that she had given the sheets of paper with the complaints listed thereon to one of the employees to give to Mr. Klaess: that Mr. Klaess had told her only lies and that they would not leave until their demands were satisfied.
The group was told on several occasions by Klaess and the policeman between 4:30 and 5:00 p.m. that the office hours were over at 4:30 p.m. and were requested to leave. All of the group left but the two defendants. The defendants did not threaten anyone, did not yell or shout and did not prevent anyone else from leaving the premises.
*211 The complainant Klaess testified he spoke to Sergeant Healy and requested him to ask the defendants to leave. About five minutes to five, Healy requested them to leave. They refused to do so. Healy then advised the defendants that if they did not leave within five minutes they would be arrested by Mr. Klaess. They refused to leave and said they would not leave unless they were carried out.
Shortly after 5:00 p.m., Mr. Klaess ordered the defendants arrested for their refusal to leave and the police thereupon carried the defendants out of the Urban Renewal office and they were placed under arrest and Mr. Klaess executed informations charging them with violation of Village Ordinance 1.3 as above indicated.
In my opinion the case of People v. Martin (43 Misc 2d 355, affd. 15 N Y 2d 933, cert. den. 382 U. S. 828) is dispositive of the case at bar. In that ease the defendants attended a school board meeting to protest the alleged failure of the board to correct racial imbalance in the public schools. They refused to leave the school after the conclusion of the meeting and after being requested to do so by the authorities. Such conduct was held to constitute disorderly conduct as defined by subd. 2 of section 722 of the Penal Law.
The language of subdivision 2 of section 722 is virtually identical with the language of Ordinance 1.3 (b) of the Village of Rockville Centre. The conduct of the defendants in the case at bar in refusing to leave a municipal office at 5 o’clock in the afternoon after being advised by proper authority that the office was closed and after being informed that their complaints would be considered and answered on the next business day is essentially the same as the conduct of the defendants in the Martin case (supra). If the conduct in the Martin case constitutes disorderly conduct under subdivision 2 of section 722 of the Penal Law, conduct essentially the same constitutes disorderly conduct under the village ordinance in question.
Various points were raised in the comprehensive briefs submitted to this court at the close of the People’s case by defense counsel. These points will be answered.
It was urged therein that this court is without jurisdiction to render an adjudication herein.
Section 180 of the Village Law provides as follows:
“ Jurisdiction to hear, try and determine charges of violations of village ordinances is hereby conferred upon magistrates as follows:
*212 1. A police justice, or, in case of his absence or inability to act, the acting police justice has exclusive jurisdiction, in the first instance. ’ ’
Section 74 of the Code of Criminal Procedure provides that Police Justices have such jurisdiction as is specifically conferred upon them by statute and that the courts held by Police Justices and courts of special sessions are called Police Courts.
There is nothing before me that questions the due establishment of this court or the status of the incumbent Justice thereof.
I hold this court has jurisdiction of the subject matter of this proceeding.
It is also urged that the court lost jurisdiction by virtue of failing to try the case within five days of the arrest as provided in section 338 of the Village Law.
Section 338 of the Village Law is not a grant of jurisdiction to the Police Justice Court. It is simply an authorization, which was required at the time that the statute was originally adopted in 1870 to enable a member of the police department or a police officer to arrest a disorderly person without process for a violation of a village ordinance committed in his presence. The statutory provision recognizes the fact that the Police Justice of the village has jurisdiction of such a charge and obviously it does not attempt to confer jurisdiction. While it is true that it provides for a prompt disposition of such a complaint by the village Judge, there is no statement therein that a failure to comply with the provisions of the statute relating to such prompt disposition will result in a loss of jurisdiction. Furthermore the authorization to adjourn for a period not to exceed five days as therein provided would seem to relate to an adjournment by the Magistrate irrespective of the wishes of the defendant or of counsel. In the case at bar, counsel for the defense requested an adjournment beyond the five-day period at the time of arraignment and such was consented thereto by the representative of the District Attorney’s office. Under such circumstances any right which the defendants had to a trial within such five-day period was waived. It is to be noted further that this section deals only with an arrest made by an officer and not by a civilian as is the case at bar.
Another point urged by defense counsel is that the arrests were illegal and improper and therefore the court lacks jurisdiction. I do not pass upon the legality of the arrests. That question is not here involved. Counsel has cited no authority for the proposition that an illegal arrest would divest this court of jurisdiction. An illegal arrest does not affect the jurisdiction *213 of the person of a defendant (People v. Baxter, 178 Misc. 625; People v. Ostrosky, 95 Misc. 104; People ex rel. Mertig v. Johnston, 186 Misc. 1041, 1044; People v. Preble, 39 Misc 2d 411).
As was stated by Mr. Justice Shientag in People ex rel. Mertig v. Johnston (186 Misc. 1041, 1044, supra): “ While ‘ the foundation for the jurisdiction of the magistrate ’ over the subject matter is the information, jurisdiction of the person of the defendant is acquired when he is brought before the court and charged with the offense. * * * or appears voluntarily * * * or appears in response to a summons instead of a warrant ® * * or is arrested illegally without a warrant.”
I hold that the court has jurisdiction of the persons of the defendants.
It is also urged by the defendants that their alleged actions which were complained of are constitutionally protected and that their conviction under the village ordinance would be unconstitutional. Numerous decisions of the United States Supreme Court are cited in support of this proposition.
Basically it seems to me that any constitutional question which may be involved herein was passed upon in the language of the Appellate Term’s opinion in People v. Martin (43 Misc. 2d 355, 357) wherein the court said: “ Thus although the
Supreme Court has decreed that the Fourteenth Amendment prohibits a State from making criminal the peaceful expression of ‘ unpopular views ’ this does not imply that persons wishing to exercise the right to express their views may comport themselves in a manner which constitutes disorderly conduct as defined in our penal statutes.”
Great emphasis is placed on the recent decision of the United States Supreme Court in Brown v. Louisiana (383 U. S. 131). In my opinion the holding in the Brown case is not determinative of the case at bar. In the Brown case, five male Negroes went into a reading or service room of a public library in Louisiana at about 11:30 o ’clock of a Saturday morning while the library was open. One of them requested a book. He was advised that the book was not in the library but the librarian told him she would try to get it for him. The five men remained in the library for a short time and they were requested to leave by the two attendants in the library who were the only other people present. They refused to do so. Thereafter the Sheriff then advised them that if they did not leave they would be arrested for refusing to leave a public building when asked to do so by an officer. Upon their refusal to leave they were arrested by the Sheriff. It was conceded that these men created no disturbance and made *214 no noise. Their deportment was “ unexceptionable ”. They sat and stood in the room, quietly, as monuments of protest against the segregation of the library”, (p. 139.)
The court inferred from the facts in the case that the library ¡ was operated on a segregated basis. As the prevailing opinion j states: ‘ ‘ There is no dispute that the library system was ¡ segregated, and no possible doubt that these petitioners were I there to protest this fact.” (p. 141).
The prevailing opinion further indicates that the court was there dealing with an aspect of a basic constitutional right — the right under the First and Fourteenth Amendments guaranteeing freedom of speech and of assembly and freedom to petition the Government for a redress of grievance.
The court went on to state in the course of the prevailing opinion as follows: ‘ ‘ A state or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and non discriminatory manner equally applicable to all and administered with equality to all. It may not do so as to some and not as to all. It may not provide certain facilities for whites and others for Negroes. And it may not invoke regulations as to use — whether they are ad , hoc or general — as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights. Cf. Wright v. Georgia [373 U. S. 284, 293].” (p. 143).
In the case at bar there is not any evidence whatsoever that there was any discrimination practiced toward the defendants or that they were treated in a manner different from anyone else. The fact is that the majority of the people who came into the office as part of the group left peacefully when requested to do so. In this case there are none of the underlying factors that appear in Brown (supra).
There was nothing ureasonable in Mr. Klaess’ advising them that their complaints would be answered within a matter of days; that it was impossible for him to analyze and answer them all then and there as demanded by the defendants. I find nothing in Brown (supra) nor in any other reported case that ■ I have read nor in the exercise of reasonable judgment that gives anyone a constitutionally protected right to make unreasonable demands upon the representatives of a public body. Neither do I find any authority to support the contention that an arbitrary refusal to leave a public office after being informed that closing time had arrived is a constitutionally protected right. The defendants here were requested to leave. It was 5 o’clock in the afternoon and they were informed that the office was closed. They were further informed that Mr. *215 Klaess would study their complaints and give them an answer within a few days. In Brown no reason for requesting the defendants to leave was given to them. In a concurring opinion in the Brown case Mr. Justice Brehnah stated (pp. 148-149): ‘ ‘ The sheriff gave petitioners no reason for the order to leave, and thus petitioners might have reasonably believed that they were being ejected only because they were Negroes seeking to exercise their constitutional rights; as my Brother Black observed in Feiner v. New Yorh, 340 U. S. 315, 327, at least where time allows, courtesy and explanation of commands are basic elements of good official conduct in a democratic society.’ ” 148
These basic elements of good official conduct were complied with in the case at bar and were not complied with in Brown.
It is interesting to note, too, that in Brown, Mr. Justice White stated (p. 150): “ Were it clear from this record that lingering in a public library for 10 minutes after ordering a wanted book contravened some explicit statute, ordinance, or library regulation of general application, or even if it were reasonably clear that a 10-minute interlude between receiving service and departure exceeded what is generally contemplatd as a normal use of a public library. I would have difficulty joining in a reversal of this case, for in either of these events I would consider a refusal to leave the library and an insistence upon violating a generally applicable condition concerning the use of the library evidence of an intent to breach the peace sufficient to sustain a conviction.” (Emphasis supplied.)
In the case at bar I think the defendants ’ refusal to leave the office after being advised that it was closed and that their complaints would receive attention was evidence of an insistence upon violating a generally applicable condition in violation of the ordinances in question.
The motion to dismiss the complaint is denied and I find the defendant, Joseph C. Kern, guilty as charged, and I also find the defendant, Luenetta L. Miller, guilty as charged.