THE STATE OF NEW JERSEY IN THE INTEREST OF
J. B., JR.

Juvenile and Domestic Relations Court—Union County

October 11, 1974.

*Mr. Tom Simon,* Assistant Prosecutor, for the State (*Mr. Karl Asch,* Prosecutor of Union County, attorney).

*Mr. Leonard Sachar,* for the juvenile (*Messrs. Sachar, Bernstein & Rothberg,* attorneys).

BRODY, J. J. D. R. C. The juvenile, charged with delinquency for possessing more than 25 grams of marijuana, moves to suppress the fruits of a warrantless search of his person.

Plainfield police officers Peter Cochin and Robert Robinson were on radio car patrol early December 9, 1973 when at approximately 1:30 A.M. they received a dispatch from headquarters followed shortly by a dispatch from an officer at the scene of an accident. The substance of these dispatches was that a car had struck a parked car, that witnesses had observed a white male with long hair alight from the errant vehicle and flee on foot toward nearby railroad tracks, and that the ignition key was missing from the vehicle which caused the accident.

As the officers drove toward where the fleeing driver was reported heading, they saw a 15-year-old white boy with long hair walking on the sidewalk in a black neighborhood several blocks from the accident site. His lip was bleeding, his right arm appeared to be hurt and his clothes were wet. At the time, bushes along the railroad tracks were wet from an earlier rain.

The officers stopped the boy, the juvenile in this case, and asked him to account for himself. He offered a succession of three inconsistent stories. Initially he claimed to have been beaten by a "black dude" but could not give details. He then claimed he got hurt in a tavern fight but was unable to give

any corroborating detail. Finally, after being advised where he was, he described being beaten up somewhere on Richmond Street in Plainfield but was unable to give details.

Officer Cochin then conducted a full search of the juvenile. He testified that he was looking for the ignition key to the car involved in the accident. In a right jacket pocket he uncovered two plastic bags allegedly containing marijuana, whereupon he told the juvenile that he was under arrest. The officers took the boy to a hospital where they conducted a more extensive search, uncovering in one of his socks a third bag allegedly containing marijuana.

After the searches the officers learned that the vehicle causing the accident had been reported stolen. They both testified that at the time of the searches they believed the juvenile guilty only of "hit and run." It did not then occur to them that the car he was driving might have been stolen.

On the State's motion before hearing, the judge dismissed for lack of evidence all complaints against the juvenile predicated on his use of the car at the time of the accident.

In a juvenile case the court will suppress evidence unlawfully obtained by an unreasonable search. *R.* 5:8-9; *N. J. S. A.* 2A:4-60; *State in the Interest of L. B.,* 99 *N. J. Super.* 589 (J. D. R. C. 1968) ; *State v. Lowry,* 95 *N. J. Super.* 307 (Law Div. 1967). Where the search was warrantless, the State has the burden of establishing its legality. *State v. Gaudiosi,* 97 *N. J. Super.* 565 (App. Div. 1967). It offers to do so in this case by showing that before the search the police had probable cause to believe that the juvenile had committed any one of several offenses and that the circumstances were exigent. *State v. Smith,* 129 *N. J. Super.* 430 (App. Div. 1974). The juvenile contends that the only offense for which there might have been probable cause was "leaving the scene of an accident," a motor vehicle offense which must be — but was not — committed in the presence of the officers for their search to have been lawful.

I

While the term "arrest" is not to be used to describe taking a juvenile into custody, it will be so used in this opinion for the purpose of evaluating the lawfulness of the search. *R.* 5:8–2(a).

New Jersey adheres to the common-law rule that a warrantless arrest for a felony is lawful if the arresting officer has probable cause, but unlawful for a misdemeanor unless the offense was committed in the presence of the officer. *State v. Smith,* 37 *N. J.* 481, 493 (1962), *cert.* den. 374 *U. S.* 835, 83 S. Ct. 1879, 10 L. Ed. 2d 1055 (1963). The reason for the in-presence requirement is that "unless the officer himself knows of the offense and the offender, it is better, in the light of the less serious nature of the alleged offense, to leave the determination of probable cause for an arrest to an officer in the judicial branch." *State v. Morse,* 54 *N. J.* 32, 35 (1969). An exception to the rule occurs where the person arrested first admits to the officer that he committed a misdemeanor, in which event the arrest is lawful even though the offense was not committed in the officer's presence. *State v. Morse, supra* at 36.

New Jersey does not classify its offenses as common-law misdemeanors and felonies. As to the application of the in-presence requirement, the distinction depends upon the maximum punishment attached to the offense: an offense carrying a punishment of imprisonment up to one year is the equivalent of a common-law misdemeanor, and an offense carying a maximum imprisonment in excess of one year is the equivalent of a common-law felony. *State v. Doyle,* 42 *N. J.* 334, 348 (1964). Thus, the in-presence requirement applies to disorderly persons and motor vehicle offenses. *N. J. S. A.* 2A:169–3; *N. J. S. A.* 39:5–25.

A lawful custodial arrest itself justifies a full search of the person arrested. *United States v. Robinson,* 414 *U. S.* 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). When facts known to the officer meet the criteria for a lawful custodial

arrest, he may legally conduct a full search of the person even though, as here, the formal arrest comes after. *State v. Smith,* 129 *N. J. Super.* 430 (App. Div. 1974). However, when facts known to the officer fall short of meeting the criteria for a lawful arrest, he may not legally conduct such a search because a full search of the person is a sufficient intrusion on privacy to require being tested by the same criteria applied to a custodial arrest.

Ordinarily there is no need to make the point that the criteria for conducting a lawful full search of the person and making a lawful custodial arrest are interchangeable, because ordinarily they are defined and circumscribed by the same constitutional standard. *Cf. Sibron v. New York,* 392 *U. S.* 40, 67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). In this case, however, we are also dealing with a nonconstitutional standard: the in-presence requirement, which heretofore has been expressed as a criterion for a lawful warrantless arrest. I conclude that it should be applied as well to a warrantless full search of the person in the absence of an attendant formal arrest. References herein to criteria for arrest are therefore to be understood as criteria for a search preceding formal arrest.

The criteria for the lawful arrest of a juvenile are those applicable to arrest for an adult offense (II hereafter) supplemented by criteria contained in rules of court pertaining to juvenile offenses (III hereafter). *State v. Smith,* 32 *N. J.* 501, 531–532 (1960); *N. J. S. A.* 2A:4–54.

## II

A preliminary question is whether an officer may lawfully make a warrantless arrest for a motor vehicle offense. *R.* 7:6–1(a) provides in part that for motor vehicle violations "the complaint and summons shall be a uniform traffic ticket * * *." In *State v. Jones,* 122 *N. J. Super.* 585, 592 (Cty. D. Ct. 1973), the court concluded that the rule thereby prohibited any warrantless arrest and that the

rule supplanted the warrantless arrest procedure provided for in *N. J. S. A.* 39:5–25, citing *Winberry v. Salisbury,* 5 *N. J.* 240 (1950), for the supremacy of a rule over a statute. I do not read the rule as establishing the exclusivity of the complaint and summons procedure. *R.* 3:4–1, made applicable to motor vehicle offenses by *R.* 7:3–1, establishes procedures to be followed in making a warrantless arrest.

The state describes the offense which prompted the search as "leaving the scene of an accident." Conceding that the in-presence requirement applies to this motor vehicle offense, the state contends that it occurred in the presence of the arresting officers in that they had probable cause to believe that the juvenile was literally leaving the scene of an accident when he was stopped and searched.

The offense is defined in *N. J. S. A.* 39:4–129 which requires the driver of a vehicle involved in an accident to identify himself in various ways depending upon whether personal injury or property damage is involved and depending upon whether the other vehicle or vehicles are attended at the time of the accident. After an accident involving only property damage to an unattended vehicle it is sufficient if the driver attach a notice of his identity to the other vehicle. Thus the question raised is whether the juvenile's failure to leave behind notice of his identity was a continuing offense still occurring in the presence of the officers when they arrested him several blocks from the scene of the accident.

Whether failure to perform a legally mandated act in time, constitutes a continuing offense has met with varying judicial responses. See *State v. Morse, supra,* overruling *State v. Orr,* 93 *N. J. Super.* 140 (App. Div. 1966); *contra, Toussie v. United States,* 397 *U. S.* 112, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). In the present case, however, that question need not be reached. There are two elements to the offense under consideration: (a) driving a vehicle involved in an accident and (b) failing to leave behind proper notice of identification. Unless all elements of an offense occur in the presence of the arresting officers it cannot be

said that the in-presence requirement has been satisfied. *People v. Craig,* 152 *Cal.* 42, 91 *P.* 997 (Sup. Ct. 1907). Because the purpose of the in-presence requirement is to prevent a mistaken arrest, the arresting officers would have to sense something more than what would appear to them to be nonoffensive behavior. *Accord,* cases involving possession and transportation of concealed liquor, collected at 20 *A. L. R.* 652 (1922) and 44 *A. L. R.* 132 (1926). Since the arresting officers did not observe the juvenile when the accident occurred, the offense did not occur in their presence.[1]

The arresting officers did not believe before the search that the juvenile had committed the equivalent common-law felony of stealing the motor vehicle he was driving. *N. J. S. A.* 2A:119–2. Nonetheless, the State next contends

---

[1] It has been suggested that an officer having probable cause may lawfully detain a suspect who he has reason to believe will otherwise escape. *State v. Morse, supra* 54 *N. J.* at 37 (dictum).

The A. L. I. *Model Code Of Pre-Arraignment Procedure,* § 110.2 (1) (a) (ii) (Proposed Official Draft No. 1, 1972) permits an officer to order a person "in suspicious circumstances" (less than probable cause) to remain in the officer's presence near the place of apprehension for a reasonable period not to exceed 20 minutes when "such action is necessary to obtain or verify the identification of such person, to obtain or verify an account of such person's presence or conduct, or to determine whether to arrest such person." In a common-law misdemeanor case, this time might be used to have a citizen eye-witness identify the suspect; the officer could then make a lawful custodial arrest as agent of the eye-witness in whose presence the offense occurred and who himself could therefore have lawfully made a citizen arrest. See *People v. Foster,* 10 *N. Y.* 2d 99, 217 *N. Y. S.* 2d 596, 176 *N. E.* 2d 397 (1961). It should be noted, however, that any detention short of a custodial arrest would not entitle the officer to conduct a full search of the person although he may lawfully pat down the outer garments of the suspect for weapons if he has reason to believe that the suspect is armed. *Cf. Terry v. Ohio,* 392 *U. S.* 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Where the officer has probable cause, the *Model Code* permits apprehension for a common-law misdemeanor committed out of the officer's presence, if he has reason to believe that the suspect will not be apprehended unless immediately arrested or may cause injury to himself or others or damage to property unless immediately arrested. *Id.* § 120.1 (1) (b) (i and ii).

that the in-presence requirement is inapplicable because they had probable cause for such a belief. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man's believing that an offense has been committed by the person to be arrested or searched. *State v. Smith,* 37 *N. J.* 481, 495 (1962). The test is an objective one determined by the reviewing judge; whether the officer believed he had probable cause is not dispositive. *State v. Zito,* 54 *N. J.* 206, 212 (1969) ; *Bailey v. United States,* 279 *A.* 2d 508 (D. C. Ct. App. 1971).

On the basis of the information that the officers had at the time they undertook the search, there was probable cause to believe that the juvenile drove the car which caused the accident described in the radio dispatches. This is based on the description of his appearance, the place where he was intercepted, the fact that he seemed out of place in that neighborhood at that time of night, the dampness of his clothes indicating he had taken the railroad track route from the scene of the accident to the point of interception, and the inconsistent and evasive answers he gave in attempting to account for himself.

However, I find that the police did not have probable cause to believe that the juvenile stole the vehicle. To be sure, the juvenile's apparent abandonment of the car suggests that he had not been using it lawfully. But theft requires intent to deprive the rightful owner of the car's use indefinitely. *State v. South,* 28 *N. J. L.* 28 (Sup. Ct. 1859). The juvenile's apparent taking of the ignition key with him suggests either ownership or some connection with the owner inconsistent with intent to steal. Also, the boy's youth, apparent to the officers, militates against larcenous intent. He could hardly expect to keep the car for long without being caught and it is not likely that a professional ring of car thieves would employ an unlicensed 15-year old whose inability to drive was amply demonstrated by the accident. Lacking larcenous intent, the juvenile would be guilty of

joy-riding, a disorderly persons offense. *N. J. S. A.* 2A:170-38.

In addition, while the officers' view of the matter is not a bar to considering whether there was probable cause, their expertise may be taken into account. *Cf. State v. Kasabucki,* 52 *N. J.* 110, 117 (1968). The officers both testified that it did not occur to them that the vehicle driven by the juvenile had been stolen. Officer Robinson testified that when they conducted the search, "We were in fact at that time looking for a hit and run driver." The gist of both officers' testimony is that even in retrospect they did not believe the juvenile had stolen the car until they learned it had been reported stolen.

The State has not met its burden of proving that before the search the officers had probable cause to believe the juvenile stole the car that caused the accident.

The State next contends that in the presence of the arresting officers the juvenile committed the disorderly persons offense of failing to give a good account of himself. *N. J. S. A.* 2A:170-1. When the officers stopped him, the juvenile was indeed unable to give a good account of himself. While this would be a literal violation of the statute, the statute must be read as interpreted in *State v. Zito, supra,* where the court sustained its constitutionality by performing radical interpretive surgery. As pointed out in *Zito,* the failure to give a good account may not be the basis or even evidence of a basis for an offense. The offense consists of being present at the place of apprehension for the purpose of committing a crime or petty offense. The statute gives police the authority to head off an offense about to be committed. The officers had no probable cause to believe that the juvenile, when stopped, was about to commit any offense.

Finally, the State contends that in attempting to account for himself the juvenile admitted to the disorderly persons offense of fighting. *N. J. S. A.* 2A:170-27. While this admission may satisfy the in-presence requirement, it is

and was then perceived by the officers to be incredible and therefore cannot form the basis of probable cause.

## III

 The Juvenile Act and implementing rules of court, both effective March 1, 1974, address themselves to searches and arrests of juveniles. *N. J. S. A.* 2A:4–60 guarantees juveniles "the right to be secure from unreasonable searches and seizures." *N. J. S. A.* 2A:4–54(a)(2) delegates to the Supreme Court the authority to establish appropriate standards for making a warrantless arrest for delinquency.

*R.* 5:8–2, implementing the new statute, provides in part:

A law enforcement officer may take into custody without process any juvenile who he has probable cause to believe is delinquent or in need of supervision.

Since delinquency is now a violation of any penal statute, had the events in this case occurred on or after March 1, 1974, the search would have been lawful because the officers had probable cause to believe that the juvenile violated *N. J. S. A.* 39:4–129 by failing to attach notice of his identity to the parked car. *N. J. S. A.* 2A:4–44(d). Lacking an in-presence requirement, the new rule thus renders admissible against a juvenile evidence which would be excluded from the trial of an adult.

 This disparity is not constitutionally offensive. The in-presence requirement being nonconstitutional, it may be legislatively abolished as to particular offenses or circumstances.[2] *United States v. Grosso,* 225 *F. Supp.* 161 (W.D. Pa. 1964). Because the applicability of the requirement depends upon the severity of the punishment attached to an offense, the requirement is alien to juvenile cases, where

---

[2]See n. 1, *supra,* for the A. L. I. proposed limitations to the requirement.

there is no punishment. *State in the Interest of M.L.*, 64 N. J. 438 (1974). This is not just a matter of semantics. Juvenile offenses are not classified in terms of the severity of possible judicial dispositions. Under the new act, juveniles coming within the jurisdiction of the court are classified either as delinquent or in need of supervision. The disposition of a case turns less on what the juvenile has done or failed to do, than on what needs to be done for the juvenile. The absence of the in-presence requirement does not, therefore, deny juveniles due process, the constitutional standard established for juvenile cases in *In re Gault*, 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

The search and arrest in the present case, however, occurred before the effective date of the Juvenile Act and its implementing rules of court. Because the purpose of the exclusionary rule is to curb police excesses, the standards of a lawful arrest and search are those in effect at the time of the police action. *Linkletter v. Walker*, 381 U. S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965).

*R.* 5:8-2 then in effect provided in part:

A law enforcement officer may take into custody without process any juvenile who in his opinion *is engaging* in conduct defined by law as juvenile delinquency. [Emphasis supplied]

Unlike the new rule which has no in-presence requirement, the former rule required it in all cases. The Supreme Court avoided this aspect of the former rule in a juvenile homicide case by holding that the arrest criteria for adult offenses are also applicable to juveniles. *State v. Smith*, 32 N. J. 501, 531 (1960). As discussed in II above, however, the search in this case cannot be sustained under those criteria.

The conduct which the arresting officer must have witnessed under the former rule is "juvenile delinquency" as then defined by law. That definition, found in the former Juvenile Act, includes "idly roaming the streets at night" and any "deportment endangering the morals, health or general welfare of [a child under 18 years of age]." *N. J. S. A.* 2A:

4-14(2)(k), (m). The constitutionality of these definitions has been sustained. *State in the Interest of L.N.*, 109 *N. J. Super.* 278 (App. Div. 1970), aff'd 57 *N. J.* 165 (1970), *cert.* den. 402 *U. S.* 1009, 91 S. Ct. 2194, 29 L. Ed. 2d 431 (1971).

█ The words of the former rule, "in his opinion", do not permit the officer to arrest at whim. He must be held to the constitutional standard of probable cause which is implicit in the language of the rule. See *State v. Profaci,* 56 *N. J.* 346, 349 (1970); *State in the Interest of L.B., supra.*

█ I have no difficulty finding that the arresting officers had probable cause to believe that the juvenile was at the time of the search engaging in conduct then defined by law as juvenile delinquency. Indeed, if "idly roaming" the streets at night is inaccurate, it is so only because there was probable cause to believe that the juvenile was purposefully escaping from the scene of an accident he had just caused which together with his apparent injuries was deportment endangering his morals, health and general welfare.

The initial search was lawful. The later search was also lawful either as a continuation of the first search or as an incident to the formal lawful arrest. *United States v. Robinson, supra.*

The juvenile's motion to suppress is denied.